UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MP VISTA, INC., HABIB PETROLEUM, and : <br> WARREN'S SHELL, INC. INDIVIDUALLY : <br> AND ON BEHALF OF THOSE SIMILARLY : <br> SITUATED : <br> : <br> vs. : <br> : <br> MOTIVA ENTERPRISES LLC and : <br> SHELL OIL COMPANY : | No. 1:07-CV-00099-*** |

**OPENING BRIEF IN SUPPORT OF**
**MOTION TO TRANSFER VENUE**

                                                                      PAUL M. LUKOFF (I.D. No. 96)
                                                                       PRICKETT, JONES & ELLIOTT, P.A.
                                                                       1310 King Street
                                                                       P. O. Box 1328
                                                                       Wilmington, DE 19899
                                                                       (302) 888-6500
                                                                       (302) 658-8111 (Facsimile)

# TABLE OF CONTENTS

Table of Citations and Authorities ................................................................................................ ii

Statement of the Nature and Stage of Proceeding ........................................................................ 1

Summary of Argument .................................................................................................................. 2

Statement of Facts ......................................................................................................................... 3

Argument ....................................................................................................................................... 6

    1.    The Eastern District of Louisiana is a Proper Venue ........................................................ 7

    2.    The Public Interest Strongly Weighs in Favor of Transferring This Action. ................... 8

    3.    The Private Interests Weigh in Favor of Transferring This Action. ............................... 10

The Private Interests Weigh in Favor of Transferring This Action. ........................................... 10

Conclusion .................................................................................................................................. 11

Certificate of Service .................................................................................................................. 13

## TABLE OF CITATIONS AND AUTHORITIES

### CASES

*Affymetrix, Inc. v. Synteni, Inc.*,
    28 F. Supp. 2d 192 (D. Del. 1998) ................................................................ 6, 9, 10, 11

*Burroughs Wellcome Co. v. Giant Food, Inc.*,
    392 F. Supp. 761 (D. Del. 1975) ................................................................................. 10

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*,
    344 F. Supp. 2d 755 (J.P.M.L. 2004) ........................................................................... 4

*In re ML-Lee Acquisition Fund II, L.P.*,
    816 F. Supp. 973 (D. Del. 1993) ................................................................................... 7

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3rd Cir. 1995) .......................................................................................... 6

*Kirschner Bros. Oil, Inc. v. Pannill*,
    697 F. Supp. 804 (D. Del. 1988) ................................................................................. 10

*Nilssen v. Osram Sylvania, Inc.*,
    No. 00-695-JJF, 2001 WL 34368395 (D. Del. May 1, 2001) ..................................... 10

*Schwarzkopf Tech. Corp. v. Ingersoll Cutting Tool Co.*,
    820 F. Supp. 150 (D. Del. 1992) ................................................................................... 7

*Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*,
    775 F. Supp. 759 (D. Del. 1991) ................................................................................... 7

*Yang v. Odom*,
    409 F. Supp. 2d 599 (D.N.J. 2006) .............................................................. 6, 7, 8, 9, 10

### STATUTES

28 U.S.C. § 98(a) ................................................................................................................ 8

28 U.S.C. § 1391(a)(2) ....................................................................................................... 7

28 U.S.C. § 1404(a) ................................................................................................... 1, 6, 7

**STATEMENT OF THE NATURE AND STAGE OF PROCEEDING**

Plaintiffs' Complaint was filed on February 21, 2007. Defendants' Answer was filed on April 2, 2007. Defendants have filed a motion to transfer venue. This is defendants' Opening Brief in support of that motion.

## SUMMARY OF ARGUMENT

All relevant factors militate in favor of a transfer of this case to the district where it would be more conveniently heard and the interests of justice would be served.

**STATEMENT OF FACTS**

Motiva is an LLC that is jointly owned by Shell Oil Company and Saudi Refining, Inc. Motiva refines and distributes gasoline under the Shell brand in the Gulf Coast and East Coast regions of the United States. Motiva distributes gasoline through a variety of "channel partners," including dealers who lease or own independent service station businesses, contract operators who run company-owned stores under various types of contractual arrangements, and wholesale distributors who supply their own networks of branded and unbranded stations.

In May 2004, Motiva discovered that some of the gasoline produced at its refinery in Norco, Louisiana, contained trace amounts of elemental sulfur and hydrogen sulfide. By the time Motiva discovered the issue, some of this gasoline had already been distributed to channel partners in Louisiana, Mississippi, and Florida for resale to the public. The small amounts of elemental sulfur and hydrogen sulfide were not hazardous, but they did cause malfunctions in the fuel gauges of some consumers' automobiles. Upon learning of the issue, Motiva immediately alerted its channel partners in the impacted area and advised them to stop selling the potentially affected grades of gasoline. Motiva began taking steps to dilute or replace the affected gasoline at stations in its distribution network. The disruption at many service stations lasted only a few hours; at other stations, certain pumps were down for a few days. Since premium gasoline often was not affected, Motiva granted its retailers and wholesalers price concessions so that they could market premium gasoline at regular-grade prices, thus minimizing lost sales. Most retailers also received voluntary financial credits from Motiva to help them recover from the incident. Finally, Motiva established an extensive claims process to complete repairs on consumers' vehicles. Motiva also sent a $20 gift card and a written apology to all customers with fuel-gauge problems, as well as a $5 gift card to all Shell credit card holders.

Despite the voluntary efforts by Motiva, within days of the announcement of the sulfur incident, multiple class action suits were filed on behalf of separate classes of consumers and retailers. A total of 26 consumer class action suits were filed, all of which were either stayed by the state courts or, if in federal court, transferred by the Judicial Panel on Multi-District Litigation to the Eastern District of Louisiana and assigned to Judge Ivan Lemelle. *See In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 344 F. Supp. 2d 755, 756-57 (J.P.M.L. 2004) (transfer of four consumer class suits in order to "eliminate duplicative discovery; prevent inconsistent pretrial rulings, *especially with respect to class certification*; and conserve resources of the parties, their counsel and the judiciary") (emphasis added).

In addition to the consumer suits, a single Louisiana retailer brought a putative class action under the Louisiana Products Liability Act on behalf of the channel partners in all three states who were required to partially or entirely shut down during the sulfur incident. *Liberty Shell, Inc. v. Motiva Enterprises, LLC,* No. 04-1770, in the United States District Court, Eastern District of Louisiana.[1] *Liberty Shell* was also assigned to Judge Lemelle and to Magistrate Judge Karen Wells Roby, who presided over the case through several pleading amendments, discovery disputes, and finally a motion for class certification. (*See* App. at A-1—A-12.)

While *Liberty Shell* was pending, a group of Florida retailers—including two of the named Plaintiffs here[2]—sought leave to join that case as named class representatives. (*Id.* at A-9, Doc. No. 76.) However, Magistrate Judge Roby denied the request as untimely because

---

[1] *Liberty Shell* was originally filed in state court in Louisiana and removed to the Eastern District of Louisiana based on diversity of citizenship. (Docket Sheet, attached as App. at A-5.)
[2] The two common plaintiffs are Habib Petroleum and Warren's Shell.

these retailers had waited until after discovery had closed and after the class certification motion had been briefed. (App. at A-20.)

Ultimately, following a class certification hearing, Judge Lemelle denied certification in *Liberty Shell* on July 27, 2006. (App. at A-22.) Judge Lemelle concluded that, under Fifth Circuit standards for class certification, the element of predominance could not be established because issues of causation and damages would be highly individualized. (App. at A-24.) In making his ruling, Judge Lemelle focused on the wide variety of businesses in the proposed class as well as the range of ancillary services provided by some, but not all, of the retailer gas stations. (*Id.*) Likewise, Liberty Shell did not demonstrate how damages could be calculated on a class-wide basis. (*Id.*) In denying the motion for class certification, however, Judge Lemelle invited the plaintiff to attempt to cure the inadequacies that he pointed out at the class certification hearing:

> So the motion is denied, but again, I really mean that its without prejudice because, you know, who knows. I might get something that would convince me to do something else.

(App. at A-27.)

Rather than try to cure the predominance problems or move again for class certification before Judge Lemelle, Liberty Shell elected to settle its individual claims, and the case was voluntarily dismissed on March 20, 2007. In the interim, however, the instant group of Plaintiffs—all of whom are Florida retailers—filed suit in this District proposing a putative class essentially identical to the one rejected by Judge Lemelle. The negligence and breach of warranty claims asserted here overlap substantially with the Louisiana products liability claims asserted in *Liberty Shell*. Remarkably, two days after *Liberty Shell* was dismissed, Mr. Andre LaPlace, the lead attorney for Liberty Shell, filed a motion to appear pro hac vice in this case.

Thus, it is now clear that the instant case represents nothing more than a gambit by putative class counsel to avoid Judge Lemelle's ruling by re-filing essentially identical claims in a far-away district in hopes of finding a friendlier forum.

## **ARGUMENT**

On a motion to transfer, this Court should examine "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3rd Cir. 1995) (citation omitted); *see also* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."). Among the public and private interests that courts typically weigh when considering a motion to transfer venue are:

(1) the plaintiff's initial choice of forum;

(2) the defendant's preference as to forum;

(3) where the claim arose;

(4) the convenience of the parties as indicated by their relative physical and financial position;

(5) the location of the sources of proof;

(6) practical considerations making trial easy, expeditious, or inexpensive;

(7) local interest in deciding local controversies at home; and

(8) the familiarity of the trial judge with the applicable state law in diversity cases.

*Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 197 (D. Del. 1998); *Yang v. Odom*, 409 F. Supp. 2d 599, 606 (D.N.J. 2006) (citing *Jumara*, 55 F.3d at 879).

The statute expressly allows transfer "in the interests of justice," which authorizes consideration of such factors as "judicial economy, cost to the parties, access to proof, and the subpoena power of the court." *Schwarzkopf Tech. Corp. v. Ingersoll Cutting Tool Co.*, 820 F. Supp. 150, 152 (D. Del. 1992). Also important are the "interests of consistency of judgments," the systemic need to reduce duplicative litigation, and any "particular local interest in deciding [a specific] dispute." *Yang*, 409 F. Supp. 2d at 609. Thus, Section 1404(a) is designed to prevent "forum shopping" by plaintiffs who seek to avoid prior rulings or governing precedents in other jurisdictions. *See id.* at 605.

Although courts normally grant deference to the plaintiff's choice of forum, "[t]he plaintiff's choice . . . becomes substantially less important . . . when he sues representatively on behalf of a class." *Yang,* 409 F. Supp. 2d at 606 (citing *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 228 (D. N.J. 1996)). Thus, Plaintiffs simply cannot rely on their own initial preference to defeat a motion to transfer venue. *In re ML-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993). "Courts will not blindly prefer the plaintiff's choice of forum." *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 765 (D. Del. 1991).

1. **The Eastern District of Louisiana is a proper venue.**

Under Section 1404(a), a court may transfer a case to "any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). Indisputably, the Eastern District of Louisiana satisfies that criteria here because "a substantial part of the events . . . giving rise to the claim occurred" in that district. 28 U.S.C. § 1391(a)(2) (defining proper venues for diversity cases). The Motiva refinery where the gasoline at issue was produced is in Norco, St. Charles Parish, Louisiana. It is events at this refinery which give rise to Plaintiffs' claims for negligence and breach of warranty. Therefore, the Eastern District of Louisiana is a proper venue to which

this case may be transferred. *See* 28 U.S.C. § 98(a) (providing that St. Charles Parish is in the Eastern District of Louisiana).

2.  **The public interest strongly weighs in favor of transferring this action.**

Not only is the Eastern District of Louisiana where the underlying events occurred, but that court has already expended substantial judicial resources on retailer and consumer class actions arising out of the sulfur incident, including a putative class virtually identical to the one proposed here. Judge Lemelle and Magistrate Judge Roby have dealt with this litigation for almost three years, and they have ruled on discovery disputes, joinder issues, and a motion for class certification. The docket sheet for the *Liberty Shell* retailer class action contains 112 entries dating back to June 2004. (App. at A-11.) In the MDL case involving consumer claims, the docket sheet contains 163 entries. (App. at A-51.) Judge Lemelle has already considered and denied a motion to certify a class encompassing all of Motiva's "channel partners . . . that were required to stop selling gasoline between May 26, 2004 and June 7, 2004," a class that is essentially identical with the proposed class definition here of all "channel partners of Motiva Enterprises, LLC and Shell Oil Company [who were] directed by defendants on May 26, 2004 to close their fuel pumps" after the sulfur incident. *Compare* Liberty Shell's Mot. for Class Cert. (App. at A-23—A-24) *with* Plfs.' Compl. ¶ V.

It would be a "gross waste of judicial resources" for the current group of Plaintiffs—two of whom unsuccessfully tried to join the *Liberty Shell* case—to be allowed to relitigate retailer class claims from scratch before a new judge when a court in the Eastern District of Louisiana has almost three years of experience with the issues.[3] *See Yang*, 409 F. Supp. 2d at 608. More significantly, "the important interests of consistency of judgments weighs

---

[3] This is particularly true given the current judicial vacancy in this District following Judge Jordan's appointment to the Court of Appeals.

in favor of transferring this case" because Judge Lemelle has already denied a motion to certify a class that is virtually identical to the one proposed here. *See id.* at 609. Plaintiffs should not be allowed to avoid the impact of Judge Lemelle's ruling by filing a new case in a distant forum that has no connection to the underlying events, no connection to the named plaintiffs or any of the absent class members, and no knowledge of the history of the litigation.

Another important factor in the transfer analysis is the familiarity of the trial judge with the applicable state law. Here, Plaintiffs purport to bring a negligence action solely under the Louisiana Civil Code and a claim for breach of warranty under the Uniform Commercial Code, which has been adopted in Mississippi and Florida, but not in Louisiana. A court in the Eastern District of Louisiana will necessarily have more practical experience and greater familiarity with the substantive law contained in the Louisiana Civil Code. Moreover, Judge Lemelle and Magistrate Judge Roby have already wrestled with the complications of a putative class involving retailers from Louisiana and nearby common-law states. Such familiarity and practical experience in applying the law of Louisiana militates strongly in favor of transfer.

Finally, there is a public policy interest in having local issues determined close to where they arose. *Affymetrix, Inc.*, 28 F. Supp. 2d at 197. Plaintiffs' claims arose by virtue of a problem with gasoline refined in Louisiana. That gasoline was distributed to retailers in Louisiana, in nearby Mississippi, and in Florida. All of the members of the putative class are from those three Gulf Coast states. Two of the three impacted states are in the Fifth Circuit, whose class certification standard Judge Lemelle expressly applied in *Liberty Shell*. By contrast, none of the class members—either named or absent—has any particular connection to Delaware.

Accordingly, the public interest in deciding controversies close to home weighs in favor of transfer.

3.  **The private interests weigh in favor of transferring this action.**

The private interests applicable to venue analysis also militate in favor of transferring to the Eastern District of Louisiana. Because Plaintiffs are seeking to proceed as a class, their choice of forum is "substantially less" important than in a typical case. *Yang*, 409 F. Supp. 2d at 606. Plaintiffs' election not to sue on their own "home turf" also lessens the deference this Court should give Plaintiffs' venue choice. *See Affymetrix*, 28 F. Supp. 2d at 198 n.6 (defining the plaintiff's "home turf" as "the forum closest to the plaintiff's residence or principal place of business" where personal jurisdiction would exist). "If the plaintiff chooses a forum which is not his 'home turf' and which has no connection to any of the acts giving rise to the lawsuit . . . the convenience to the plaintiff of litigating in his chosen forum is not as great." *Kirschner Bros. Oil, Inc. v. Pannill*, 697 F. Supp. 804, 806 (D. Del. 1988); *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 763 (D. Del. 1975). Defendants' forum choice outweighs Plaintiffs' initial selection because Plaintiffs' choice has no connection with the facts of this case. This is especially true here where it is not just the named class representatives, but also the *absent* class members, who are all from states other than Delaware.

A Louisiana forum is more convenient for all parties. The named Plaintiffs are located in Florida, which is a short and inexpensive plane ride from New Orleans. Likewise Defendants, although they are organized in Delaware,[4] have their principal places of business in

---

[4] The mere fact that Defendants are organized under the laws of Delaware does not weigh in favor of retaining the suit here. *Cf. Nilssen v. Osram Sylvania, Inc.*, No. 00-695-JJF, 2001 WL 34368395 at * 2 (D. Del. May 1, 2001) (concluding that the convenience of the parties weighed in favor of transfer when the contacts with Delaware were minimal and consisted of (1)

Houston, Texas, which is an hour from New Orleans by plane. Moreover, should it become necessary, the court in the Eastern District of Louisiana will have subpoena power over witnesses working at or living near the Norco refinery, whereas this Court would not. *See Affymetrix, Inc.*, 28 F. Supp. 2d at 203 ("Traditionally, the location of potential witnesses and, thus, their ability to be subject to compulsory process has weighed heavily in the 'balance of convenience' analysis."). Accordingly, the private interests in the venue analysis weigh in favor of transferring this action to the Eastern District of Louisiana.

## CONCLUSION

Defendants' motion to transfer should be granted. The interests of justice would be better served by transferring this litigation to a forum with more experience with the facts and the law, and one in a location closer to the origins of the dispute. The only contact Delaware has with this dispute is that Defendants are incorporated here. This contact alone is simply not enough given the countervailing interests of judicial economy, consistency of judgments and rulings, the convenience of parties and witnesses, and practical trial issues such as the reach of the subpoena power. Accordingly, this action should be transferred to the Eastern District of Louisiana.

---

incorporation, (2) one salesperson working out of a Delaware home office, and (3) that some of the products at issue were sold in Delaware). [App. at A-78]

PRICKETT, JONES & ELLIOTT, P.A.

BY: _____
PAUL M. LUKOFF (I.D. No. 96)
1310 King Street
P. O. Box 1328
Wilmington, DE 19899
(302) 888-6500
(302) 658-8111 (Facsimile)

ATTORNEYS FOR DEFENDANTS
MOTIVA ENTERPRISES LLC AND
SHELL OIL COMPANY

Of Counsel:

David M. Rodi
State Bar No. 00797334
Jennifer A. Powis
State Bar No. 24041716
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, TX 77002
(713) 229-1234
(713) 229-1522 (Facsimile)


Ann Spiegel
State Bar No. 061223
1300 S.W. 5th Avenue
Suite 2500
Portland, OR 97201
(503) 295-4033
(503) 778-5299 (Facsimile)

Dated: April 2, 2007

## CERTIFICATE OF SERVICE

       I hereby certify that on April 2, 2007, a true and correct copy of the foregoing was sent via electronic mail to all counsel of record.

       Jonathan B. O'Neill, Esq.
       Morton R. Kimmel, Esq.
       Michael D. Bednash, Esq.
       Kimmel, Carter, Roman & Peltz, P.A.
       200 Biddle Avenue, Suite 101
       Springside Plaza
       Newark, Delaware 19702

       _/s/ Paul M. Lukoff_
       PAUL M. LUKOFF (I.D. No. 96)
       Prickett, Jones & Elliott, P.A.
       1310 King Street
       P. O. Box 1328
       Wilmington, DE 19899
       (302) 888-6500