IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MP VISTA, INC., HABIB PETROLEUM,          NO. 1:07-CV-00099-***
WARREN'S SHELL, INC., INDIVIDUALLY
AND ON BEHALF OF THOSE
SIMILARLY SITUATED

VERSUS

MOTIVA ENTERPRISES, LLC AND SHELL
OIL COMPANY

## ANSWERING BRIEF IN
## OPPOSITION TO MOTION TO TRANSFER

Mr. Morton Kimmel, Esq.
DE Bar Roll No. 132
Mr. Michael Bednash
DE Bar Roll No. 2948
Kimmel Carter
200 Biddle Avenue
Springside Plaza, Suite 101
Newark, DE  19702
Phone: 302-392-2000

André P. LaPlace
2762 Continental Drive, Ste 103
Baton Rouge, Louisiana 70808
Telephone No.: (225) 924-6898
LA Bar Roll Number: 8039

## <u>TABLE OF CONTENTS</u>

Table of Citation and Authorities                                          3

Statement of the Nature and Stage of Proceeding                            4

Summary of Argument                                                        5

Statement of Facts                                                         6

Argument                                                                   7

    1.    The defendants have failed to persuade that the public and private
           interests underlying the Motion to Transfer Venue to the Eastern
           District of Louisiana strongly weigh in favor of disturbing
           the plaintiffs' choice of forum.

Conclusion                                                                 11

Certificate of Service                                                     11

## TABLE OF CITATIONS AND AUTHORITIES

### Cases

*Affymetrix, Inc. v. Synteni, Inc.*, 28 Supp.2d 192, 197-201
    (D.Del. 1998)          9

*Bering Diagnostics GMBH, Inc. v. Biosite Diagnostics, Inc.*,
    1998 WL 24354 (D.Del. 1998)    8

*Jumara v. State Farm Ins. Co.,* 55 F.3d 873 (3d Cir. 1995)    7,8

*Motorola v. P-C TPL, Inc. and Altocom, Inc.*, 58 F. Supp. 2d 349
    (D. Del. 1999)    8,9

*Shutte v. Armco Steel Corp.,*, 431 F.2d 22, 25 (3rd Cir. 1970) *cert denied*
    401 US 901, 91 S.Ct. 871, 271 L.Ed. 2d 808 (1971)    7

*Waste Distillation Technology, Inc. v. Pan American Resources, Inc.,*
    775 F.Supp. 759 (D. Del. 1991)    7


### Statutes

28 USC § 1332    4

28 USC § 1404(a)    4, 7


### TREATISE

15 WRIGHT MILLER COOPER 3854    7, 8

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

The plaintiffs filed a class action complaint on February 21, 2007 naming Motiva Enterprises LLC ("Motiva") and Shell Oil Company ("Shell") as defendants (Docket Item ["D.I."]1).  The basis of subject matter jurisdiction is the diversity of the parties as required by 28 USC 1332. (i.d. at para. III).  The defendants, after answering, filed a Motion to Transfer Venue to the Eastern District of Louisiana pursuant to 28 USC 1404(a). (D.I.8.)

## <u>SUMMARY OF ARGUMENT</u>

1.    The defendants have failed to persuade that the public and private interests underlying the Motion to Transfer Venue to the Eastern District of Louisiana strongly weigh in favor of disturbing the plaintiffs' choice of forum.

## STATEMENT OF THE FACTS

The facts giving rise to the litigation between the parties in this case, are not in dispute. (App.1) The plaintiffs, MP Vista, Inc., Habib Petroleum and Warren's Shell, Inc. are South Florida corporations who operate convenience stores with fuel pumps that sell gasoline provided by Motiva under predominantly the Shell or Texaco brands.  (App. 2-5).  On June 17, 2004 in a communiqué from Houston, Texas, the defendants conceded to its retail channel partners [a term of art for its downstream fuel customers] that they would "be receiving compensation to help with the hardship resulting from this temporary interruption of your business.  (App. 6)  In discovery response to the prior litigation in the Eastern District of Louisiana, Motiva and Shell Responded:

> "Motiva admits that some quantities of gasoline processed during May 2004 and delivered to the service stations, . . . may damage the fuel sending units of certain makes and models." (App. 7-8)."

On June 1, 2004, a New Orleans "retail channel partner" filed a <u>Class Action Petition for Damages</u> with the 24th Judicial District Court in Jefferson Parish Louisiana. (App. 9-12).  The evolution  of the claims against Motiva and Shell are understood by comparing the initial state court petition with the complaint filed in this Honorable Court. (D.I. 1).  The plaintiffs note that the Liberty Shell, Inc. Motion for Class Certification was denied <u>without</u> prejudice.  (App. 13).  The defendants herein admitted in their answer that jurisdiction and venue are proper in this district.  (D.I. 7 at paras. 3 and 4).  The class representatives' businesses and records are located in South Florida.  The contaminated fuel was refined in Louisiana, Shell and Motiva are incorporated and domiciled in Wilmington, Delaware with their principal places of business in Houston, Texas.  The putative class consists of 875 retail branded outlets, with the overwhelming number of businesses being located in South Florida.

# ARGUMENT

28 USC 1404(a) provides:

"for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The burden of proof falls on the movant to show the convenience of the parties and the witnesses, as well as the interests of justice weigh in favor of transfer.  See *Waste Distillation Technology, Inc. v. PanAmerican Resources, Inc.*, 775 F.Supp. 759, 762 (D. Del. 1991) ("transfer is not to be liberally granted.") and *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3rd Cir. 1970) cert denied 401 US 901, 91  S.Ct. 871, 271 L.Ed. 2d 808 (1971) (the balance of convenience must be <u>strongly in favor</u> of the movant).

In *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3rd Cir. 1995), this circuit, in concluding the plaintiff's choice of forum should not be "lightly disturbed", set forth expanded criteria for determining a motion to transfer.  The court wrote:

> In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." <u>15. WRIGHT, MILLER & COOPER § 3847</u>.  While there is no definitive formula or list of the factors to consider, see 1A Pt. 2 MOORE's para. 0.345[5], at 4363, courts have considered many variants of the private and public interests protected by the language of § 1404(a).

> The private interests have included:  plaintiff's forum preference as manifested in the original choice, 1A PT. 2 MOORE'S, para. 0.345[5], at 4363; the defendant's preference, <u>15 WRIGHT, MILLER & COOPER § 3848, at 385;</u> whether the claim arose elsewhere, *id.* § 3848; the convenience of the parties as indicated by their relative physical and financial condition, *id.* § 3849, at 408; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, *id.* § 3851, at 420-22; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum), *id.* § 3853.

> The public interests have included:  the enforceability of the judgment, 1A, PT. 2 MOORE'S para. 0.345[5], at 4367; practical considerations that could make the trial easy, expeditious, or inexpensive, *id.*; at 4373; <u>15. WRIGHT, MILLER & COOPER § 3854</u>; the local interest in deciding

local controversies at home, 1A PT. 2 MOORE'S para. 0.345[5], at 4374; the public policies of the for a, see 15 WRIGHT, MILLER & COOPER § 3854; and the familiarity of the trial judge with the applicable state law in diversity cases, *id.*

The opening brief of Motiva and Shell [D.I. 9 at p. 6] in support of their Motion to Transfer addressed eight of the eleven *Jumara* criteria. Turning to the public and private interests considered by Shell and Motiva, the plaintiffs answer as follows:

1.    The plaintiffs' initial choice of forum is Delaware.

2.    The defendants' choice of forum is the District of Eastern Louisiana.

3.    The claims arose where the damages occurred, i.e., Miami, Florida, in the case of the three putative class representatives.

4.    Shell and Motiva chose to be incorporated in Delaware and maintain their principal places of business in Houston, Texas. It seems counter-intuitive to suggest that it is inconvenient for them to litigate in Delaware. [NOTE: ". . .the relative economic burden [of] litigating in Delaware is minimal." *Bering Diagnostics GMBH, Inc. v. Biosite Diagnosticsw, Inc.,* 1998 WL 24354 (D.Del. 1998)]

5.    The locations of witnesses and evidence in this case range from Miami, Florida to Houston, Texas.

6.    When analyzing practical considerations the plaintiffs respectfully suggest the Eastern District of Louisiana, situated in New Orleans, LA, offers poor infrastructure, post-Katrina violence and other issues which make it ill-suited as a convenient forum.

7.    The jurors in the forum State of Delaware should have a local interest in the multi-national corporations, Shell and Motiva, that have availed themselves of this State's corporate laws/regulations.

8.    In that the choice of law issues in this case entail merely warranty and negligence claims, and Motiva admits it made contaminated fuel, any application of Louisiana and/or Florida law will be straight forward and non-complex.

This District in *Motorola v. P-C TPL, Inc. and Altocom, Inc.* 58 F. Supp. 2d 349 (D. Del. 1999) addressed private interest issues similar to those underlying the instant inquiry

and denied a Motion to Transfer to the Northern District of California. The plaintiff had originally filed suit against the defendants in Massachusetts but dismissed and refiled in Delaware although both defendants had their corporate headquarters in Northern California. The court, citing *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 197-201 (D. Del. 1998), reiterated that:

> . . . regardless of whether or not a plaintiff is suing on its "home turf" its choice of forum receives "paramount" consideration. *Id.* at 200. As a result, the court can only disturb this choice if the defendant shows that "the balance of convenience tips strongly in favor of transfer." See *id.* at 200.

In *Motorola* court acknowledged the geographical inconvenience of Delaware for the Northern California defendant, but suggested because of its resources, interests, activities and markets which extended beyond Northern California, it could "shoulder the burden of litigation in Delaware." The court in language applicable to Motiva and Shell, because they also stumble when attempting to explain the supposed burden of litigating in this forum, said about the defendant, that:

> As a result, AltoCom cannot reasonably complain about the particular and unique problems that a smaller, local business might have in defending itself in this forum. See *Affymetrix,* 28 F.Supp.2d at 202 (citing *Wesley-Jessen Corp v. Pilikington Corporation* with fairly substantial interests that operates in the national and international marketplace. See *Id.* (citing same). Moreover, it has developed its business in anticipation of doing business around the country and the globe. See *Id.* (citing same). Consequently, AltoCom must be able to identify some unique or unexpected burden associated with defending this action that militates in favor of transfer.

The District Court also observed that technological advances in communications reduce the costs of litigating in a "distant forum." Like Motiva, the defendant in the *Motorola* case only made a general non-specific complaint about witness availability which provoked this district to write:

> As a result, AltoCom cannot reasonably complain about the particular and unique problems that a smaller, local business might have in defending itself in this forum. See *Affymetrix,* 28 F.Supp.2d at 202 (citing *Wesley-Jessen Corp v. Pilikington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D.Del. 1993) Instead, while, small, AltoCom is a corporation with fairly substantial interests that operates in the national and international marketplace. See *Id.* (citing same). Moreover, it has developed its

business in anticipation of doing business around the country and the globe. See *Id.* (citing same). Consequently, AltoCom must be able to identify some unique or unexpected burden associated with defending this action that militates in favor of transfer.

The District Court also observed that technological advances in communications reduce the costs of litigating in a "distant forum." Like Motiva, the defendant in the *Motorola* case only muster a general non-specific complaint about witness availability which caused this court to previously write:

> However, "[g]iven the lack of specificity with which these individuals are identified and the [total] absence of adequate information with respect to the content and materiality of their testimony, the court affords them no weight in its balancing tests. See *Affymetrix,* 28 F.Supp.2d at 205 (citing, *inter alia*, *United Airlines v. United States*, 192 F.Supp. 795, 796 (D.Del. 1959).

The defendants public interest argument also fails to persuade because Judge Lemelle's prior ruling on class certification was <u>without prejudice</u> so that Motiva and Shell's expressed concern over inconsistent results in different forums appear dramatically over emphasized. Likewise, the choice of law questions presented by this cause are non-complex applications of generic warranty and negligence claims. Finally, in the context of this forum's local interest, the plaintiffs note that the citizens of Delaware have a serious public interest in controlling the conduct of multi-national mega corporations which seek to avail themselves of Delaware's benefits but avoid the operation of its court system.

## CONCLUSION

The plaintiffs, MP Vista, Inc., Habib Petroleum, Warren's Shell, Inc., Individually And On Behalf Of Those Similarly Situated respectfully conclude that the defendants Motiva and Shell have not met their   collective burden to establish that the public and private interest underlying the § 1404 transfer balance <u>strongly</u> in their favor.  Therefore, the defendants' Motion to Transfer Venue should be denied.

Respectfully submitted:


/s/Michael Bednash

_____
Mr. Morton Kimmel, Esq.
DE Bar Roll No. 132
Mr. Michael Bednash
DE Bar Roll No. 2498
Kimmel Carter
200 Biddle Avenue
Springside Plaza, Suite 101
Newark, DE  19702
Phone: 302-392-2000


André P. LaPlace
2762 Continental Drive, Ste 103
Baton Rouge, Louisiana 70808
Telephone No.: (225) 924-6898
LA Bar Roll Number: 8039


## CERTIFICATE

I hereby certify that on March 29, 2007, a copy of the foregoing Memorandum was electronically filed with the Clerk of Court using CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.


_/s/Michael Bednash_____
Michael Bednash

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MP VISTA, INC., HABIB PETROLEUM,                   NO. 1:07-CV-00099-***
WARREN'S SHELL, INC., INDIVIDUALLY
AND ON BEHALF OF THOSE
SIMILARLY SITUATED

VERSUS

MOTIVA ENTERPRISES, LLC AND SHELL
OIL COMPANY

**APPENDIX TO PLAINTIFFS' ANSWERING
BRIEF IN OPPOSITION TO MOTION TO TRANSFER**

Mr. Morton Kimmel, Esq.
DE Bar Roll No. 132
Mr. Michael Bednash
DE Bar Roll No. 2948
Kimmel Carter
200 Biddle Avenue
Springside Plaza, Suite 101
Newark, DE  19702
Phone: 302-392-2000
DE Bar Roll No. 2948

André P. LaPlace
2762 Continental Drive, Ste 103
Baton Rouge, Louisiana 70808
Telephone No.: (225) 924-6898
LA Bar Roll Number: 8039

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MP VISTA, INC., HABIB PETROLEUM,               NO. 1:07-CV-00099-***
WARREN'S SHELL, INC., INDIVIDUALLY
AND ON BEHALF OF THOSE
SIMILARLY SITUATED

VERSUS

MOTIVA ENTERPRISES, LLC AND SHELL
OIL COMPANY

## TABLE OF CONTENTS TO APPENDIX

B-1    Photograph – Miami Herald

B-2    Consumer Advisory  5/2/7/04

B-4    Media Update  5/28/04

B-6    Motiva/Shell Directive 6/17/04

B-7    Defendants' Response to Request for Admissions  10/8/04

B-9    Class Acton Petition for Damages  6/1/04

B-13   Minute Entry 7/26/04



DONNA E. NATALE PLANAS/HERALD STAFF

**OUT OF GAS:** Two men push a car to a Shell station in North Bay Village last week. Unfortunately, there was no gas to be had due to the high sulfur content discovered in some Shell and Texaco gasolines.



<u>To:</u>   Shell and Texaco Retailers and Jobbers
<u>Re:</u>   Regular and Plus Grade Gasoline Product Quality Concern
        Tampa and Southeast Florida Markets

We have identified a product quality issue with Regular and Plus gasoline delivered from our terminals in Tampa and Port Everglades.

The following information will be released to the media about this situation.

# CONSUMER ADVISORY

## May 27, 2004

### Florida Gas Gauge Advisory

Motiva Enterprises LLC has determined that some gasoline delivered into its Tampa and Port Everglades Distribution Terminals contain elevated levels of sulfur. The elevated levels of sulfur may cause gas gauge sensors on some vehicles to malfunction; however, these elevated sulfur levels are not known to affect engine performance or cause engine damage.

Motiva is temporarily ceasing the sale of regular and mid-grade gasoline from these terminals; however, premium gasoline continues to meet quality specifications and will continue to be sold.

Some Texaco and Shell-branded stations supplied by the Tampa and Port Everglades Terminals are suspected of receiving gasoline with elevated levels of sulfur. Because the quality of our gasoline is paramount to us, we have elected to temporarily halt selling regular and mid-grade gasoline at stations where we suspect the gasoline has been affected. Premium gasoline will continue to be sold at regular grade prices. We are working to remedy the situation at affected locations to ensure the integrity of our product.

Customers experiencing unusual gas gauge readings are encouraged to monitor their mileage or to keep fuel tanks filled in order to prevent run-outs. Shell stands behind its products and affected customers can contact Shell at **1-866-562-6690** for further information and assistance.

Third-party terminals used by Motiva located in Jacksonville, Panama City and Niceville are unaffected by this fuel quality issue. Product tests are underway at third-party terminals used by Motiva in Pensacola and Orlando to verify product quality.

Motiva and Shell regret this occurrence and are working diligently and applying all appropriate resources to resolve known and suspected sulfur issues affecting fuel quality as quickly as possible. In addition, we are also working closely with affected parties to help ensure adequate supplies of gasoline for our customers.

- End Of Advisory -

EXHIBIT
B-2

EXHIBIT
Coburn #2

Exhibit B

MOT. LS - 0008(

If you have been notified by your Sales Consultant or your Sales Manager, your station must stop selling Plus gasoline as well as Regular, whether you blend Plus at the station or receive Plus from one of these terminals.

We are working to remedy this situation as quickly as possible at stations that have been affected.

In the interim, we have reduced RTW and MTW prices for Premium to match Regular prices. This will be reflected on your invoice. We strongly encourage you to sell Premium to your customers at the price of Regular.

At this time, there is no additional information available; however, be assured that we will communicate with you as soon as we know more.

If your station has not been notified to stop selling gasoline, you should feel confident that your fuel meets the high standards required by Shell.

If you have any questions, you may contact your Shell representative; however, at this time they may have no additional information.

Please be assured that we will communicate with you as soon as new information is available.



EXHIBIT

B-3

MOT. LS - 00081

<u>**To:**</u>    Shell and Texaco Retailers and Jobbers
<u>**Re**</u>:    Regular and Plus Grade Gasoline Product Quality Update
       Tampa & Southeast Florida Markets

Product quality issues at the Motiva Enterprises LLC Tampa Terminal noted in our previous advisory have been resolved. All fuels at the Tampa Terminal have been thoroughly tested and meet our high fuel quality standards.

Distribution of Regular, Plus, and Premium gasoline from the Port Everglades Terminal suspended. We are working diligently to resolve this situation and will communicate the status in a future advisory.

The following advisory has been released to the media.

# MEDIA UPDATE

**May 28, 2004**

# Florida Gasoline Quality Issue

As of 6 a.m. EDT today, the Motiva Tampa Distribution Terminal began supplying customers with all grades of product. All grades being supplied from this terminal currently meet our fuel quality standards. Of 118 Shell and Texaco branded stations in the Tampa area originally affected, 20 continue to have their gasoline sales suspended. We are working diligently to restore those stations to full service.

As of last night, the Motiva Distribution Terminal in Port Everglades suspended the sale of premium grade gasoline due to recently detected elevated levels of sulfur. This follows the suspension of regular and mid-grade gasoline yesterday. Efforts are underway to supply the terminal with product that currently meets our fuel quality standards.

Sales of gasoline from Shell and Texaco branded stations supplied from the Motiva Port Everglades Terminal will not occur until such time as they are re-supplied with fuel that meets our fuel quality standards. We are working quickly and diligently to restore these stations to full service.

The elevated levels of sulfur may cause gas gauge sensors on some vehicles to malfunction; however, these elevated sulfur levels are not known to affect engine performance or cause engine damage. Customers experiencing unusual gas gauge readings are encouraged to monitor their mileage or to keep fuel tanks filled in order to prevent run-outs. Customers who believe that their vehicles' fuel gauges have been damaged by gasoline originating from Motiva Terminals can contact the Shell Customer Service Center at 1-866-562-6690. Customers are

Exhibit C



MOT. LS - 00095

asked to be patient and try again later if they experience difficulty in getting through to the Service Center.

**Shell / Motiva Media Line:** 713-241-1578

**Media Contacts:**

Helen Bow                         Shawn Frederick
Shell Oil Company                 Shell Oil Products US
713-241-4544                      713-241-1571

END OF ADVISORY

<u>Note to our Channel Partners:</u>

➢ Specific stations impacted by this problem have been contacted by their Shell Representative and will be notified when the gasoline on site is ready for resale.

➢ If your station was not notified to stop selling gasoline, you should feel confident that your fuel meets the high standards required by Shell.

➢ Questions regarding credit and other payment issues generated by this event will be addressed in a communication you will receive shortly.

➢ Please direct any customer request for assistance or additional information to 1-866-562-6690

➢ A website has also been established for customers that wish to file a claim. www.interactclaims.com/shell



June 17, 2004

To: All Retail Channel Partners

We believe we have acted swiftly to address the fuel gauge incidents that have occurred your market by focusing our efforts on the protection and safety of our customers, channel partners, and fellow employees. While we continue to work diligently on the reputation and trust of our brand to our customers, it is equally important to us that we do the same with you. Just as important as re-establishing that trust is recognizing the financial impact this had on your business. With this in mind, I am pleased to inform you that you will be receiving compensation to help with the hardship resulting from this temporary interruption of your business.

Specifically, you should receive a credit to your account within the next 48 hours to help mitigate the effect of this incident on your business. I personally want thank you for your patience as we worked together to identify and solve a difficult situation in a short period of time. If you have any questions, please don't hesitate to contact your Account Manager.

Shell is celebrating its 100th anniversary of the brand in the U.S. this year. I believe that one of the principal reasons the company has reached such an important milestone is because of the relationships we have built with our customers. Providing quality fuels has always been at the core of our business and I commit to you that we will continue that tradition as we embark on our second century of doing business in the U.S.

Regards,


David Moss
General Manager – South Region





# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LIBERTY SHELL, INC., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | * | CIVIL ACTION NO. 04-1770 |
| | * | SECTION "B" |
| versus | * | MAGISTRATE 4 |
| | * | HONORABLE IVAN L.R. LEMELLE |
| SHELL OIL COMPANY, SHELL OIL PRODUCTS USA, MOTIVA ENTERPRISES, L.L.C. | * | MAGISTRATE KAREN WELLS ROBY |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEFENDANTS' RESPONSE TO REQUEST FOR ADMISSION

NOW INTO COURT, through undersigned counsel, come Motiva Enterprises LLC, Shell Oil Company, and Shell Oil Products Company LLC (collectively "Defendants") to respond as follows to the Request for Admission served by the plaintiff on September 10, 2004.

## REQUEST FOR ADMISSION:

Please admit or deny that the elemental sulfur fuel sold to Liberty Shell, Inc. in May of 2004, did <u>not</u> meet Motiva Enterprises, LLC's then current specifications.

## RESPONSE TO REQUEST FOR ADMISSION:

Motiva denies that all product manufactured during the relevant time period failed to meet specifications. Motiva admits that some quantities of gasoline processed during May 2004,



EXHIBIT

B-7

and delivered to the service stations recently identified to the plaintiff in response to plaintiff's

interrogatories, may damage the fuel sending units of certain makes and models of automobiles.

Respectfully submitted,

Donald R. Abaunza (Bar #2273), T.A.
George Denegre, Jr. (Bar #8387)
Kelly T. Scalise (Bar #27110)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
One Shell Square
New Orleans, LA. 70139-5099
Telephone:    (504) 581-7979
Facsimile:    (504) 556-4108

Attorneys for Motiva Enterprises LLC, Shell Oil
Company, and Shell Oil Products Company LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served

upon all counsel of record via facsimile or by placing same in the United States mail, properly

addressed and postage prepaid this 8th day of October, 2004.

537521_1



24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA



608-110

LIBERTY SHELL, INC., INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED

NUMBER:_____

SECTION:_____

VERSUS

SHELL OIL COMPANY, SHELL
OIL PRODUCTS USA, MOTIVA
ENTERPRISES, L.L.C.

DIV. G
JUDGE
ROBERT A. PITRE, JR.

FILED FOR RECORD
04 JUN -1 AM 8:27
DEPUTY CLERK
PARISH OF JEFFERSON, LA

### CLASS ACTION PETITION FOR DAMAGES

NOW INC. through undersigned counsel comes, Liberty Shell,
INC., individually and on behalf of others similarly situated, a limited liability
Louisiana company doing business in Jefferson Parish and respectfully states as follows:

I.    INTRODUCTION

(a) The petitioner, Liberty Shell, INC., brings this class action on its own behalf and
on behalf of all others similarly situated pursuant to La. C.C.P. art. 591, et seq.

(b) Petitioner requests this Honorable Court allow it to prosecute claims against Shell
Oil Company, its subsidiary Shell Oil Products USA and Motiva Enterprises,
LLC via class action proceedings on behalf of all Louisiana gas station
operators/owners who were supplied, since May 1, 2004, forward sulfur-tainted
fuel from a Motiva Enterprises, L.L.C. refinery by Shell Oil Company or its
subsidiary Shell Oil Products USA and suffered economic loss therefrom.

(c) The petitioner individually and on behalf of all others similarly situated seek to
prosecute this claim for the reasons hereinafter set forth and allege the following
particulars, all based upon information and belief and reasonably reliable
information obtained from various sources including public statements by the
defendant(s), media reports and the public record.

II.    PARTIES

(a)    Made petitioner herein is Liberty Shell, INC., a Louisiana
company and doing business at all relevant times herein, as an
independent gas station operator doing business in Jefferson Parish.

(b)    Made defendant herein is Shell Oil Company an active non-Louisiana
corporation licensed to do and doing business in Louisiana and at all
relevant times herein the owner of the distributor and refinery which
distributed and refined the sulfur-tainted fuel in Louisiana in May of 2004.

(c)    Also made defendant herein is Shell Oil Products USA, a wholly owned
subsidiary of defendant, Shell Oil Company and at all relevant times
herein including May of 2004, the distributor of the sulfur-tainted fuel in
Louisiana.



EXHIBIT
B-9

(d)  Also made defendant herein is Motiva Enterprises, L.L.C., a non-
Louisiana limited liability company licensed to do and doing business in
Louisiana and all relevant times herein the refiner of sulfur-tainted fuel at
its Louisiana refinery.

### III.  FACTS

(a) Prior to or during May of 2004, defendant, Motiva Enterprises LLC's Louisiana
refinery produced fuel with unreasonably high levels of sulfur, which although
naturally present in crude oil, can ruin vehicle fuel gauges and make empty tanks
appear full, if not reasonably refined from the crude oil.

(b) Defendant, Shell Oil company and/or its subsidiary, Shell Oil Products USA,
distributed the sulfur-tainted fuel supplied by Motiva Enterprises, LLC to the
petitioner and those similarly situated and heretofore defined, in May of 2004.

(c) On or about May 27, 2004, the defendants ordered the gas pumps of the tainted
fuel recipient gas stations in the New Orleans area, closed because of the
voluminous number of consumer complaints resulting from the unknowing sale of
the tainted fuel in Louisiana.

(d) Upon information and belief 250 gas stations in the New Orleans area alone
received the sulfur tainted fuel in May of 2004.

(e) The petitioner and those similarly situated and heretofore defined experienced a
drastic/monumental sales revenue and profit decline at a time (Memorial Day
Weekend) when sales revenue are traditionally high.

(f) Shell Oil Company has apologized for purveying the sulfur-tainted gas in
Louisiana during May of 2004.

### IV.  LIABILITY

Defendants, Shell Oil Company, Shell Oil Products USA and Motiva Enterprises
as a result of the aforesaid acts and/or omissions breached its duties to the petitioner,
Liberty Shell, *IPC* and those similarly situated in the following non-exclusive manner:

1. Manufacturing sub-standard fuel (defective product), in that the Sulfur
from the crude oil was insufficiently extracted;

2. Distributing sub-standard fuel with an excessive and damaging sulfur
content;

3. Failure to warn the gas station owners/operators of Louisiana of the sulfur-
tainted fuel resulting in petitioners dispensing/selling the same without
warning to the consumer/end-user;

4. Failure to timely correct and remediate the damages flowing to the
petitioner and those similarly situated from their receipt and sale of tainted
fuel in May of 2004; and

5. Breaches of the Louisiana products liability law including failure to warn
and manufacturing a defective product.



EXHIBIT
B-10



## V.    DAMAGES

The petitioner and those similarly situated as a proximate result of the breaches of duty heretofore enumerated as to the named defendants have sustained the following damages:

1.    Loss of revenue and corresponding profits;

2.    Loss of future sales revenue and corresponding profits; and

3.    Loss of business reputation;

4.    Loss of goodwill;

5.    Interruption of business;

6.    Indemnification costs including damages and attorney fees resulting from anticipated litigation against the petitioner for the sale of tainted fuel;

7.    Attorney fees and costs.

## VI.    QUALIFICATION FOR CLASS ACTION

(A)    This action may be properly processed as a "Class Action" in accordance with Louisiana Code of Civil Procedure, article 591, *et seq*, and accordingly, petitioners bring this class action on behalf of themselves as well as all other petitions/class members similarly situated, with petitioners herein proceeding as the representative members of the proposed class.

(B)    The Louisiana Class Action Procedure affords a *superior* vehicle for the efficient disposition of the issues and claims herein presented.

(C)    The aforementioned proposed class is so numerous, that a level of *numerosity* is presented which would be better handled through the class action procedure rather than a mass joinder of individual claims.

(D)    Though the exact number and identity of class members are not presently known, they can best be identified through coordinated discovery pursuant to this class action.

(E)    The questions of fact and law arising out of defendant's conduct as described above are common to all members of the class, and the common issues pertaining to the determination of fault and the liability for compensatory and exemplary damages *predominate* over the individual issues of quantum.

(F)    The determination of fault and the basis for assessment of damages may be made without the necessity of proof at this time as to the amount of those damages, thereby establishing guidelines for settlement and/or subsequent trials in individual cases if necessary.

(G)    Petitioners herein have sustained damages of the nature described herein above, and are suitable representatives of the class.

(H)    Plaintiff representatives herein are represented by a skilled attorney who is experienced in the handling of mass tort class actions and who may be



EXHIBIT

B-11

expected to handle this action in an expeditious and economical manner to the best interests of all of the above.

WHEREFORE, PETITIONERS, Liberty Shell, INC., individually and on behalf of all others similarly situated, pray:

i.    That the defendants be served with a copy of this Class Action Petition for Damages and be duly cited to appear and answer same;

ii.   For an order certifying the Class Action pursuant to the applicable provisions of La. C.C.P. art. 591, *et seq.* for the purposes of determining the common issues of liability for damages, and appointing the petitioners and their counsel to represent not only petitioners but also the certified class;

iii.  That upon certification of the class action, the court call for the formulation of a suitable management plan pursuant to La. C.C.P. art. 593.1;

iv.   That after due proceedings are had, there be a judgment in this matter in favor of the petitioners and against the defendants for the compensatory damages due the petitioners and each member of the class, all alleged herein, and a will be proven in due course;

v.    That the rights of the petitioners and all members of the class to establish their entitlement to compensatory and the amounts thereof, be reserved for determination in their individual actions when appropriate;

vi.   The applicable pre-judgment interest, from date of judicial demand until the judgment and accrued interest are paid;

vii.  For costs of the prosecution of this action; and

viii. For all other general and equitable relief as may be applicable under the facts and circumstances of this matter, including but not limited to creation of a future damages fund and payment of future related expenses, as this court may order in its discretion.

Respectfully Submitted:

Gregory M. Porobil
Attorney at Law
3300 Bienville Street
New Orleans, LA 70119
Telephone No.: (504) 822-3600
Bar Roll Number: 10598

**André P. LaPlace**
2762 Continental Drive, Ste 103
Baton Rouge, Louisiana 70808
Telephone No.: (225) 924-6898
Bar Roll Number: 8039



EXHIBIT

b-12

Case 1:07-cv-00099-GMS   Document 13-3   Filed 04/20/2007   Page 13 of 13
Case 1:07-cv-00099-***   Document 10-2   Filed 04/02/2007   Page 23 of 52

Case 2:04-cv-01770-ILRL-KWR   Document 99   Filed 07/27/2006   Page 1 of 1

MINUTE ENTRY
LEMELLE, J.
JULY 26, 2006

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

LIBERTY SHELL, INC.                    CIVIL ACTION NO.

versus                                 04-1770

SHELL OIL CO., ET AL.                  SECTION B(4)


    A hearing was held in the above-captioned case regarding
Plaintiff's Motion for Class Certification (Rec. Doc. No. 54).
For the reasons orally assigned in Court,

    **IT IS ORDERED** that the Plaintiff's Motion for Class
Certification is **DENIED WITHOUT PREJUDICE.**

_____
UNITED STATES DISTRICT JUDGE



A-22